IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD ALLEN,<br><br>                Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-5186 (JBS)<br><br>[Crim. No. 09-892]<br><br>**OPINION** |

APPEARANCES:

Ronald Allen
No. 57405-112
U.S.P. Atwater
P.O. Box 019001
Atwater, CA 95301
    Petitioner, pro se

Robert Stephen Stigall, AUSA
Office of the U.S. Attorney
District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101
    -and-
Sarah M. Wolfe, AUSA
Office of the U.S. Attorney
District of New Jersey
402 East State Street, Suite 430
Trenton, NJ 08608
    Attorneys for Respondent

**SIMANDLE, Chief Judge:**

**I.  INTRODUCTION**

Petitioner Ronald Allen brings this petition to vacate, set
aside or correct his sentence pursuant to 28 U.S.C. § 2255.

[Docket Items 1 & 9.] A jury convicted Petitioner of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, and on July 26, 2011, this Court sentenced Petitioner to 70 months imprisonment and three years of supervised release, as well as restitution and other penalties. [Cr. Docket Item 51.][1] Petitioner now moves for the Court to vacate, set aside or correct his sentence on three grounds: (1) he was deprived of the effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution; (2) the Court of Appeals improperly rejected his argument that the offenses took place outside the applicable statute of limitations period; and (3) the Court improperly instructed the jury regarding the statute of limitations and the Court's jurisdiction because it was never established that the offense took place in the United States. For the reasons discussed below, the Court will deny the Petition.

## II.  BACKGROUND

On December 3, 2009, a federal grand jury returned a one-count indictment against Petitioner charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 for his role in a scheme to sell fraudulent insurance policies through which Petitioner accumulated approximately $366,918.93 in

---

[1] The Court will refer to items on Petitioner's criminal docket as "Cr. Docket Item ___."

illegal proceeds. (Indictment [Cr. Docket Item 1] ¶ 10.) On May
10, 2010, Petitioner's counsel filed an omnibus pretrial motion
seeking, inter alia, dismissal of the Indictment on the grounds
that Petitioner was not involved in the conspiracy during the
five-year statute of limitations period. [Cr. Docket Item 13.]
The Government opposed Petitioner's motion and argued that it
would prove at trial that Petitioner collected fraudulent
insurance premiums from his co-conspirator, Gilbert Scott
Morgan, on December 7, 2004. (USA Opp. [Cr. Docket Item 14] at
22.) After oral argument, this Court denied Petitioner's motion
to dismiss the Indictment for violation of the statute of
limitations. [Cr. Docket Item 16.]

On December 14, 2010, a jury convicted Petitioner of
conspiracy to commit mail and wire fraud in violation of 18
U.S.C. § 1349. [Cr. Docket Item 46.] On July 26, 2011, this
Court sentenced Petitioner to 70 months imprisonment and three
years of supervised release, as well as restitution and other
penalties. [Cr. Docket Item 51.] The only objection to the
Court's Guideline calculation was Petitioner's counsel's
objection to the two-point enhancement for sophisticated means
pursuant to U.S.S.G. § 2B1.1(b)(9) of the Guidelines.
(Sentencing Transcript ("Sentg. Tr."), USA Ex. A [Docket Item
10-1] at 4-24.) The Court rejected Petitioner's argument and
applied the two-point enhancement for sophisticated means. (Id.

3

at 44-45.) The Court determined that the base offense level was
seven pursuant to U.S.S.G. § 2B1.1, that a 14 level increase was
appropriate pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because the
amount of loss was $692,736.28, and that a four-point
enhancement was appropriate pursuant to U.S.S.G. §
2B1.1(b)(2)(B) because there were more than 50 victims. (Id.)
This resulted in a total offense level of 27. (Id.) Because
Petitioner had zero criminal history points, the Guideline range
of imprisonment was 70 to 87 months. The Court imposed a
sentence of 70 months imprisonment followed by three years of
supervised release and ordered restitution of $692,736.28. (Id.
at 52-53.)

Petitioner appealed and the Third Circuit affirmed the
decision of this Court on July 11, 2012. [Cr. Docket Item 63.]
The Court of Appeals rejected Petitioner's arguments (1) that
the charges against him were barred by the statute of
limitations; (2) that there was insufficient evidence of his
participation in the conspiracy during the statute of
limitations period; (3) that this Court erred by not instructing
the jury regarding unanimity as to a factual issue; (4) that
this Court erred by when it gave a jury instruction regarding
multiple conspiracies; (5) that this Court abused its discretion
by instructing the jury on willful blindness; and (6) that he
was entitled to a new trial due to ineffective assistance of

4

counsel. See United States v. Allen, 492 F. App'x 273, 276 (3d Cir. 2012). Addressing Petitioner's statute of limitations argument, the Court of Appeals concluded that there was sufficient evidence of activity in furtherance of the conspiracy within the statute of limitations period for this Court to deny Petition's omnibus pretrial motion, as well as sufficient evidence at trial that by accepting money from the proceeds of the conspiracy, Petitioner was still a participant in the conspiracy during the statute of limitations period. Id. at 276-78. Further, the Court of Appeals found that the record was insufficient to evaluate Petitioner's ineffective assistance of counsel claim and noted that Petitioner's ineffectiveness claim should be addressed on collateral review. (Id. at 280-81.)

On August 29, 2013, Petitioner timely filed the instant pro se Petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. [Docket Item 1.] The Court gave Petitioner due notice of his right to amend his petition to include any additional grounds within 30 days under United States v. Miller, 197 F.3d 644 (3d Cir. 1999) on September 17, 2013, and Petitioner indicated in response that he would not be amending his petition. On October 17, 2013, the Court ordered the Government to file an answer to the Petition. [Docket Item 5.] On January 31, 2014, Petitioner filed a motion to amend the

Petition. [Docket Item 9.] The Government responded to the Petition and Amended Petition that same day, January 31, 2014.

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. § 2255(b); see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief). A hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. United States v.

<u>Costanzo</u>, 625 F.2d 465, 470 (3d Cir. 1980) (quoting <u>Machibroda</u> <u>v. United States</u>, 368 U.S. 487, 495 (1962)).

**IV.  DISCUSSION**

**A. Ineffective Assistance of Counsel**

Petitioner argues that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. "To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice." <u>Premo v. Moore</u>, 131 S. Ct. 733, 739 (2011). A petitioner must show (1) that "'counsel's representation fell below an objective standard of reasonableness,'" and (2) "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> (citing <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)); <u>see also</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). "Judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. The Third Circuit has cautioned that it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>Buehl v. Vaughn</u>, 166 F.3d

163, 169 (3d Cir. 1999) (quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

Petitioner advances eleven bases for his ineffective assistance of counsel claim: (1) failing to object to pretrial motion to dismiss; (2) failing to complete investigation; (3) failing to obtain grand jury transcripts; (4) failing to file all required pretrial motions; (5) failing to investigate and/or impeach government witnesses; (6) failing to move for the suppression of evidence; (7) failing to secure sworn affidavits and declarations for defense witnesses; (8) failing to object to unjust jury instructions; (9) withholding defense strategy from Petitioner until the first day of trial; (10) failing to object to the two-point sophisticated means enhancement at sentencing and for failing to make any other objections at sentencing; and (11) failing to move for acquittal under Fed. R. Crim. P. 29 based on the statute of limitations. The Court will address each in turn.

### 1. Failure to object to pretrial motion to dismiss

Petitioner first argues that trial counsel was deficient in failing "to object to pre-trial motion to dismiss." (Petition [Docket Item 1] at 5.) However, the Court construes Petitioner's argument as based on counsel's failure to file a pretrial motion

to dismiss and "all required pre-trial motions."[2] (Id.)
Petitioner's argument is meritless because counsel filed a
motion to dismiss in an omnibus motion on May 10, 2010. The
pretrial motion requested the following: (1) pretrial disclosure
of any evidence of prior bad acts; (2) disclosure of any
exculpatory material; (3) disclosure of any expert testimony;
(4) disclosure of defendant's statements under Fed. R. Crim. P.
16; (5) a bill of particulars identifying the names of the
alleged co-conspirators; (6) an order requiring the Government
to preserve agent rough notes; and (7) dismissal of the
indictment based on the statute of limitations. [Cr. Docket Item
13.] The Court heard oral argument on Petitioner's motion on
July 8, 2010 and entered an order dated July 12, 2010 granting
in part and denying in part Petitioner's motion. [Cr. Docket
Item 16.]

The Court finds Petitioner's assertion that counsel failed
to file all required pretrial motions both factually inaccurate
and insufficiently specific to establish ineffective assistance
of counsel. Petitioner does not explain what pretrial motions
should have been filed or what effect they would have had on the
outcome of the case. Therefore, Petitioner has failed to show
any deficiency by trial counsel or prejudice as a result.

---

[2] Failure to file all required pretrial motions is also the
fourth ground for Petitioner's ineffective assistance of counsel
claim listed in the original Petition.

Petitioner also asserts in his Amended Petition that trial counsel should have moved for dismissal based on a lack of an interstate commerce allegation in the Indictment. However, the Indictment included an interstate commerce allegation. (Indictment ¶ 2.) Therefore, the Court is unable to conclude that trial counsel erred in failing to seek dismissal for lack of an interstate commerce allegation. As such, the first basis for Petitioner's ineffective assistance of counsel claim is meritless.

### 2. Failure to complete investigation

Petitioner asserts that trial counsel failed to "complete investigation, including, but not limited to, pre-trial subpoena requests, and arranging private investigation(s) to dispute alleged claims in indictment." (Petition at 5.) The Government argues that Petitioner has failed to specify who counsel should have subpoenaed, what testimony these witnesses would have offered, and what effect their testimony would have had on the outcome. In his reply, Petitioner identifies "Rick Lindsey, CEO of Prime," "the representative [to] the New Jersey Insurance Department," "Harry Briglow," and "the person in Rotuma who had volunteered to testify that UPIC was properly formed." (Reply [Docket Item 13] at 17-21.) Petitioner also provides hypothetical testimony from these individuals, which he contends would have been adduced at trial. However, Petitioner provides

no basis upon which the Court could conclude that trial counsel was unreasonable in failing to investigate or subpoena these witnesses.

Even if the Court were to accept Petitioner's assertion that counsel failed to investigate and subpoena certain defense witnesses, Petitioner must also show prejudice. Petitioner must show more than just a "conceivable" likelihood of a different result. Harrington v. Richter, 131 S. Ct. 770, 792 (2011). "The effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Grant v. Lockett, 709 F.3d 224, 235 (3d Cir. 2013) (quoting Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (internal citation and quotation omitted)).

Petitioner's conviction was supported by ample evidence of a conspiracy to sell fraudulent insurance policies and the hypothetical testimony proffered by Petitioner is insufficient to show more than a conceivable likelihood of a different result. Testimony from Lindsey, CEO of Prime, that he approved the Universal Pacific Insurance Co. ("UPIC") financial statement and agreed to the sale of Prime to Petitioner only shows the extent of the fraud and deception employed by Petitioner and his co-conspirators. Testimony from a representative of the New

11

Jersey Insurance Department to establish that an alien insurance company can legally write business does little to undermine Petitioner's participation in a conspiracy to sell fraudulent insurance policies in New Jersey. Similarly, Petitioner contends that Harry Briglow would testify that he introduced Petitioner to his co-conspirator, Morgan, but he was aware of no conversations regarding the fraudulent nature of the proposed business with Morgan. Again, such testimony would not outweigh the overwhelming evidence at trial of the fraudulent arrangement between Petitioner and Morgan, and the attempts to conceal it, including falsified documents. Finally, Petitioner asserts that "the person in Rotuma"[3] volunteered to testify that UPIC was properly formed and had the authority to conduct insurance business. This assertion is vague and conclusory and provides insufficient grounds for an evidentiary hearing. See Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) ("[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing."). Therefore, the Court concludes that Petitioner has failed to present sufficient grounds for an evidentiary hearing and failed to present sufficient evidence of

---

[3] Rotuma is an island in the South Pacific that is merely "a dependency of the Republic of the Fiji Islands," as to which this Court took judicial notice in its Order filed December 6, 2010. [Cr. Docket Item 33.]

prejudice to establish ineffective assistance of counsel on the basis of inadequate investigation.

### 3. Failure to obtain grand jury transcripts

Petitioner argues that trial counsel was ineffective because he failed to obtain certain grand jury transcripts. It is undisputed that the Government failed to produce the grand jury transcript of Government witness, Perry Slaton. Slaton flew from Las Vegas to New Jersey to testify at trial on December 7, 2010, but the omission of his grand jury transcript was not discovered until December 8, 2010, after Slaton had returned to Las Vegas. The Court heard argument on the Government's omission the next day, December 9, 2010.

The Government explained that Slaton's grand jury transcript was inadvertently omitted from a disk containing the Government's Jencks and other materials. (Dec. 9 Trial Tr. ("Dec. 9 Tr."), USA Ex. E [Docket Item 10-2] at 9-10.) Petitioner's trial counsel stated that the omission did not affect his cross-examination of Slaton because the grand jury transcript did not contain exculpatory information or new information not included in another report. Trial counsel explained:

> [A]side from my surprise when he indicated that he had
> testified before the Grand Jury and that being an
> unexpected answer, the contents of it are not – don't
> contain anything that would have impacted my cross-
> examination in any significant way.

. . .
It's all <u>Giglio</u>. There's nothing that – it could be used
for impeachment. And again, you know, to be perfectly
honest, I don't believe that the Grand Jury testimony – the
only thing I could have used the Grand Jury testimony would
have been to ask him, well, you didn't testify before the
Grand Jury about the conversation in the hotel room where
Mr. Allen was drunk, and he wasn't asked about it, so I
don't even know that I would have gone there for that
reason. And although the details of that conversation are
not contained in any 302, it is referenced that there was
this conversation in a hotel room in 2005 in Las Vegas
where Mr. Allen indicated in sum and substance that he got
into trouble with the Gil Morgan thing and he's sorry that
he might have gotten Mr. Slaton in it, too.

(<u>Id.</u> at 5-6.) Accordingly, trial counsel did not seek any relief

and the Court found no prejudice to Petitioner. The Court

stated:

Well, in a case like this with so many documents, it's not
surprising something can be overlooked along the way. It
seems that it's been remedied to the degree that is
necessary and fair at this point. And I expressly find that
the omission of these relatively few documents was
inadvertent, that they were not sought to be in some way
concealed or delayed, they were listed in the <u>Jencks</u> list,
which itself is a very lengthy list. Most importantly, it
appears that the inadvertence has caused no harm or
prejudice to the defendant and that the door remains open
throughout the trial to any application that would take a
second look at this non-disclosure or seek in some fashion
to remedy it, including recalling the witnesses or the
arrival of stipulations and so forth.

(<u>Id.</u> at 12-13.)

Because trial counsel conceded that Slaton's grand jury

transcript would not have impacted his cross-examination and the

Court determined that Petitioner suffered no harm or prejudice

as a result of the Government's omission, the Court rejects

14

Petitioner's argument that trial counsel was deficient in not seeking relief due to the Government's omission of Slaton's grand jury transcript.[4]

### 4. Failure to investigate and/or impeach Government witnesses

Petitioner argues that trial counsel was ineffective in failing to investigate and/or impeach Government witnesses. Although Petitioner does not identify the witnesses trial counsel allegedly failed to investigate or impeach, the Court will consider Petitioner's claim as to Government witness Burt Stonefield.

Stonefield's criminal history report was among the documents inadvertently omitted from the disks provided to defense counsel before trial. The Court permitted the parties to take Stonefield's testimony by deposition in California before trial on November 30, 2010 due to his poor health. The omission of Stonefield's criminal history report was discovered on December 8, 2010 after his deposition. The Court heard argument on this omission on December 9, 2010.

Trial counsel stated:

> We are not asking for – I want to be clear, we are not asking for relief. We talked about possibly recalling him or – you know, the only thing we could do is ask him were you convicted of this crime of dishonesty and in 1990 was this your sentence. And, you know, I suppose we, if we

---

[4] Petitioner has not identified any other transcripts omitted or withheld by the Government.

> think that's important for the jury to know, we would ask
> the Court that we be allowed to introduce the fact that –
> there be a stipulation that he was convicted of this crime
> and the parameters of what Rule 609 would permit. At this
> point that is not what we're seeking, although we would
> like to reserve that consideration of that.

(Dec. 9 Tr. at 7-8.) Trial counsel did not make any request regarding Stonefield's prior conviction.

The Court finds trial counsel's decision not to seek relief related to Stonefield's prior conviction to be a strategic decision inappropriate for reconsideration on collateral review. See Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies" counsel's role as an advocate). Further, Petitioner provides no explanation for how he was prejudiced by trial counsel's decision not to seek relief for the Government's omission. Therefore, trial counsel's decision not to seek relief due to the omission to Stonefield's criminal history does not support Petitioner's claim of ineffective assistance of counsel.

### 5. Failure to move for the suppression of evidence

Petitioner asserts that trial counsel failed to "move for the suppression of evidence." (Petition at 5.) Petitioner's assertion is unsupported by any facts or argument. Petitioner

16

fails to specify what evidence should have been suppressed and why. Accordingly, Petitioner's claim that trial counsel failed to move for the suppression of evidence does not support his claim for ineffective assistance of counsel or provide grounds for an evidentiary hearing. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) ("[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing.").

### 6. Failure to secure sworn affidavits and declarations for defense witnesses

Similarly, Petitioner makes the conclusory assertion that trial counsel failed to secure "sworn affidavits and declarations for what were to be defense witnesses." (Petition at 5.) Petitioner fails to identify individuals for whom trial counsel allegedly should have secured affidavits or explain how such affidavits would have changed the outcome at trial. Therefore, for the same reasons discussed above, Petitioner's claim for ineffective assistance of counsel is meritless to the extent it relies on counsel's alleged failure to secure affidavits of unidentified defense witnesses.

### 7. Failure to object to unjust jury instructions

17

Petitioner argues that trial counsel was deficient in failing to object to unjust jury instructions. Petitioner alleges two specific errors: (1) trial counsel's failure to request a "multiple conspiracy" jury instruction and (2) trial counsel's failure to request a "'unanimity' instruction when it became clear that there was a 'Prime' conspiracy and a UPIC conspiracy." (Reply at 14.) However, the Government notes that trial counsel requested and obtained, over the Government's objection, a jury instruction regarding multiple conspiracies and withdrawal. (Dec. 13 Trial Tr. ("Dec. 13 Tr."), USA Ex. F [Docket Item 10-2] at 72-87.) As such, Petitioner's argument that trial counsel failed to request a multiple conspiracy instruction is factually inaccurate and thus meritless.[5]

Turning to the unanimity instruction, Petitioner argued on direct appeal that this Court erred by not instructing the jury sua sponte regarding unanimity as to which company Petitioner and his co-conspirator agreed to use to perpetrate the fraud. See Allen, 492 F. App'x at 278-79. The Court of Appeals found that this Court did in fact instruct the jury as to the necessity for a unanimous verdict. Id. The Court of Appeals also

---

[5] Petitioner also argues that trial counsel should have moved for acquittal "based on multiple conspiracies." (Am. Petition [Docket Item 9] at 12.) However, counsel's decision to seek a multiple conspiracy jury instruction rather than move for acquittal was a strategic decision that this Court declines to second-guess on collateral review.

stated that "[t]here is no requirement that the Court, *sua sponte*, render a jury instruction regarding unanimity as to the means by which he engaged in the conspiracy." Id. at 279. Accordingly, Petitioner's argument regarding a unanimity instruction was raised and rejected on direct appeal and this Court declines to revisit it now. See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986)).

### 8. Failure to disclose defense strategy until the day of trial

Petitioner argues that trial counsel withheld the defense strategy until the first day of trial. The Court finds Petitioner's bald allegations insufficient to support a claim for ineffective assistance of counsel. Petitioner fails to identify anything improper about trial counsel's strategy or how withholding it until the day of trial prejudiced him. Petitioner has not identified a trial strategy that would have differed from counsel's, nor one that would have changed the outcome at trial. Therefore, the Court rejects Petitioner's claim for ineffective assistance of counsel on this ground.

### 9. Failure to object at sentencing

19

Petitioner argues in ground one of his Petition and part (x) of ground two that trial counsel failed to raise any objections at sentencing besides counsel's objection to the two-point sophisticated means enhancement. In his Amended Petition, Petitioner notes that trial counsel should have argued for a three-level reduction in the offense level for interruption of the offense pursuant to U.S.S.G. § 2X1.1 and that the enhancement for the number of victims was incorrect.

The Court first addresses Petitioner's argument that trial counsel should have argued for a three-level reduction under U.S.S.G. § 2X1.1. Petitioner argues that "the evidence at trial was that policies were sold by Morgan based on a pending but not completed acquisition of Prime by Allen. When Prime issued a C&D letter, insurds [sic] were informed, and given the option of a refund in June 2004 or having coverage from UPIC. This ended the alleged conspiracy as regards Prime." (Am. Petition [Docket Item 9] at 9.) However, Petitioner misapplies U.S.S.G. § 2X1.1 to the facts of his case. U.S.S.G. § 2X1.1(b)(2) provides:

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2). The commentary for Section 2X1.1 states:

> In most prosecutions for conspiracies or attempts, the
> substantive offense was substantially completed or was
> interrupted or prevented on the verge of completion by the
> intercession of law enforcement authorities or the victim.
> In such cases, no reduction of the offense level is
> warranted. Sometimes, however, the arrest occurs well
> before the defendant or any co-conspirator has completed
> the acts necessary for the substantive offense. Under such
> circumstances, a reduction of 3 levels is provided under
> §2X1.1(b)(1) or (2).

Commentary to U.S.S.G. § 2X1.1.

The evidence at trial was clear that the conspiracy was substantially completed before the scheme was interrupted. Petitioner's argument that the conspiracy ended when insureds were "given the option of a refund in June 2004 or having coverage from UPIC" ignores the fact that the conspiracy was ongoing and not limited to Prime. Petitioner and his co-conspirators obtained hundreds of thousands of dollars before the scheme could be considered interrupted. As such, the Court rejects Petitioner's contention that trial counsel should have argued for a three-level reduction under U.S.S.G. § 2X1.1(b)(2) because such a reduction was not warranted.

The Court next considers Petitioner's argument that the Court erred in applying sentencing enhancements for loss amount and number of victims and that trial counsel was deficient for failing to object to these enhancements. Petitioner contends that the "victim count was not caused by Allen, but by Morgan and Petrillo." (Am. Petition at 12.) Additionally, "Petrillo's

21

'sales' were not based on any material misrepresentation or omission of Allen or even Morgan as required by statute." (Id. at 11.) Petitioner misstates the facts adduced at trial. Petrillo's sales were based on Petitioner's issuance of fraudulent insurance policies from Petitioner's fictitious company, UPIC, and Petrillo sent more than $100,000 from these sales to Morgan, who distributed a portion of the proceeds to Petitioner. Petrillo participated in an additional scheme, but he was also involved in the same scheme as Petitioner.

Under the Guidelines, Petitioner is responsible for the amount of loss resulting from the offense and all the victims of the offense. The Guidelines define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 App. n.3(A)(i). "Reasonably Foreseeable Pecuniary Harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." § 2B1.1 App. n.3(A)(iv). In Petitioner's case, he knew that Morgan and others were selling fraudulent Prime and UPIC insurance policies and he received a portion of the proceeds. This Court found Petitioner responsible for the actual loss resulting from the offense, $692,736.28. See Presentence Report, USA Ex. B [Docket Item 10-1] ¶¶ 64, 76. As such, the 14-point enhancement was proper pursuant to U.S.S.G. § 2B1.1(b)(1)(H).

The same is true of the enhancement for the number of victims. Evidence at trial established that Petitioner participated in a scheme with 74 victims. See Presentence Report ¶¶ 64, 77. Those victims and their losses were thoroughly documented and even today the Petitioner does not contest particular details. Accordingly, the Court properly applied a four-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(B).

Because the enhancements applied at sentencing were proper, no objection at sentencing was warranted. Accordingly, trial counsel cannot be considered deficient for failing to object to the above enhancements and, even if he could, Petitioner is unable to show prejudice from such a failure.[6]

### 10. Failure to move for acquittal based on statute of limitations

---

[6] In fact, trial counsel argued in a written sentencing memo that the enhancements for the number of victims and sophisticated means would result in a sentence disproportionate to the goals of sentencing and to the sentences of his co-conspirators. (Def. Sentencing Memo ("Def. Memo"), USA Ex. G [Docket Item 10-1] at 2.) Trial counsel also objected to the two-point enhancement for sophisticated means, on which the Court heard extensive argument at sentencing. (Sentg. Tr. at 4-24.) Trial counsel also argued in the sentencing memo and at the sentencing proceeding for reductions based on the factors in 18 U.S.C. § 3553(a), including Petitioner's age, health, marital status and supportive community, employment status, minimal criminal history, need for restitution, marginal deterrent effect, and need to avoid unwarranted sentencing disparities. (Def. Memo at 6-7; Sentg. Tr. at 26-36.) Having considered these arguments, the Court sentenced Petitioner to 70 months imprisonment, at the bottom of the Guideline range. (Sentg. Tr. at 44-51.)

Petitioner further argues that trial counsel was deficient for failing to file a motion for acquittal under Fed. R. Crim. P. 29 because his involvement in the fraudulent scheme fell outside the statute of limitations period. Petitioner raised his argument regarding the statute of limitations on direct appeal and the Third Circuit rejected it.

Petitioner merely reprises his statute of limitations argument in this § 2255 Petition. As here, the Court of Appeals noted on direct appeal that "Allen argue[d] that this case is untimely because the conspiracy was concluded and perfected . . . on November 24, 2004, when the last policy was bought and sold by UPIC, [ ] the moneys [ ] disbursed by coconspirators was not in furtherance of the conspiracy, but the conspiracy in fact was completed in total upon the last sale of the UPIC policy, which was prior to December 3rd, about ten days earlier." Allen, 492 F. App'x at 276 (internal quotation and citation omitted). The Court of Appeals concluded that "there was sufficient evidence of activity that falls within the SOL and activity in furtherance of the conspiracy after December 3, 2004 that Allen's argument must fail. The District Court committed no error on this point." Id. at 277. The Court of Appeals also found that Petitioner did not affirmatively withdraw from the conspiracy prior to the running of the statute of limitations period. Id. at 278. The Court explained:

24

> There was testimony from one of the FBI Special Agents that RRG received wire transfers for funds from March 23, 2004 to December 7, 2004. "[I]n order to establish a prima facie case, he [the defendant] must demonstrate either that he gave notice to his co-conspirators that he disavows the purpose of the conspiracy or that he did acts inconsistent with the object of the conspiracy." [United States v. Antar, 53 F.3d 568, 583 (3d Cir. 1995)].
> Allen did not demonstrate that he had given notice to Morgan or any other co-conspirators that he would no longer be involved in the conspiracy. By accepting money from the proceeds of the conspiracy, Allen acted consistently with the intent of the conspiracy . . . . We find that Allen was still a participant in the conspiracy during the SOL period.

Id.

Because Petitioner's argument was already raised and rejected on direct appeal, the Court declines to address it again. See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986)). Further, even if the Court were to consider it in light of his claim for ineffective assistance of counsel, Petitioner would be unable to show prejudice or harm from counsel's failure to move for acquittal on statute of limitations grounds.[7]

### B. Statute of Limitations

---

[7] For the same reasons, the Court rejects Petitioner's suggestion that appellate counsel was deficient for failing to appeal en banc the Court of Appeals' decision regarding the statute of limitations. (Am. Petition at 1.)

In ground three of his Petition, Petitioner argues that the "Appellate level never weighed . . . evidence in determining true time of offense in question." (Petition at 6.) Petitioner asserts that both the District Court and Court of Appeals "failed to recognize that the sole evidence examined had been the testimony of Petitioner's co-conspirator." (Id. at 7.)

Petitioner misstates the evidence and misunderstands the role of the court at trial and on appeal. First, as discussed above, there was additional evidence of Petitioner's participation in the fraudulent scheme beyond the testimony of his co-conspirator. Second, the jury weighs the evidence at trial, not the district court or the court of appeals on review. See United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) ("[W]e 'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury.'") (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)); United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002) ("It is not our role to weigh the evidence or to determine the credibility of the witnesses."). As previously discussed, the Court of Appeals found that "there was sufficient evidence of activity that falls within the SOL and activity in furtherance of the conspiracy after December 3, 2004 that Allen's argument must fail." Allen, 492 F. App'x at 277.

Accordingly, the Court rejects Petitioner's argument regarding the court's role in weighing the evidence on the statute of limitations issue.

### C. Jury Instructions

Petitioner argues that the Court improperly instructed the jury regarding the statute of limitations and the Court's jurisdiction because it was never established that the offenses took place in the United States. Petitioner acknowledges that the Court of Appeals addressed his statute of limitations argument, but not his argument regarding the failure to establish jurisdiction.

The Government correctly notes that Petitioner's argument fails on procedural and substantive grounds. First, claims that could have been, but were not, raised on direct appeal are not reviewable on a writ of habeas corpus unless the defendant "establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'" Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)). Cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him," Coleman v. Thompson, 501 U.S. 722, 753 (1991), for example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel." McCleskey v. Zant, 499 U.S. 467 (1991) (citation omitted). A defendant establishes

27

"prejudice" by showing that the error "so infected the entire trial that the resulting conviction violates due process." U.S. v. Frady, 456 U.S. 152, 169 (1982) (citation and internal quotation omitted). Here, Petitioner did not raise his jurisdictional argument on direct appeal. He has not identified anything external that caused his failure to raise this argument on direct appeal, nor has he identified any new facts explaining his failure. Moreover, this is not a case that constitutes a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 748 (1991) (citation and quotation omitted). Therefore, Petitioner's argument regarding a failure to establish jurisdiction is procedurally barred.

Even if Petitioner's argument were not barred, there was sufficient evidence at trial to establish that the offense occurred within the United States. Petitioner was located in the United States during the offense and multiple witnesses testified to Petitioner's presence at meetings in furtherance of the conspiracy in Las Vegas and Southern California. Further, all of the victims of the fraudulent scheme were located in the United States and Petitioner received the proceeds of the scheme in the United States. Therefore, Petitioner's argument regarding a lack of jurisdiction is meritless.

**V.     CONCLUSION**

For the reasons explained above, the Court finds that no evidentiary hearing is necessary and the Court will deny the Petition to vacate, set aside or correct his sentence. An accompanying Order will be entered.

**VI.  CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.

| | |
|---|---|
| **May 14, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |